Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Rene Pieri-Gober*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Pieri-Gober,<br><br>                 Plaintiff,<br><br>        v.<br><br>Liberty Life Assurance Company of Boston;<br>Avnet Inc.; Avnet Inc. Disability Plan,<br><br>                 Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Rene Pieri-Gober (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

## *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of

2  the United States.

3  *Parties*

4       2.      Plaintiff is a resident of Maricopa County, Arizona.

5       3.      Upon information and belief, Avnet, Inc. (hereinafter referred to as the

6  "Company") sponsored, administered and purchased a group long-term disability insurance

7  policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter

8  referred to as "Liberty Mutual").  The specific Liberty Mutual long term disability group

9  insurance policy is known as Group Policy No.: GF3-860-066398-01 (hereinafter

10  referred to as the "Policy").  The Company's purpose in sponsoring, administering and

11  purchasing the Policy was to provide long term disability insurance for its employees.

12  Upon information and belief, the Liberty Mutual Policy may have been included in and

13  part of an employee benefit plan, specifically named the Avnet Inc. Disability Plan

14  (hereinafter referred to as the "Plan") which may have been created to provide the

15  Company's employees with welfare benefits.  At all times relevant hereto, the Plan

16  constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

17       4.      Upon information and belief, Liberty Mutual functioned as the claim

18  administrator of the policy; however, pursuant to the relevant ERISA regulation, the

19  Company and/or the Plan may not have made a proper delegation or properly vested

20  fiduciary authority or power for claim administration in Liberty Mutual.

21       5.      Liberty Mutual operated under a conflict of interest in evaluating her long-

22  term disability claim due to the fact that it operated in dual roles as the decision maker with

23  regard to whether Plaintiff was disabled as well as the payor of benefits.  Liberty Mutual's

24

25

26

1   conflict existed in that if it found Plaintiff was disabled, it was then liable for the payment of

2   her disability benefits.

3       6.      The Company, Liberty Mutual and the Plan conduct business within

4   Maricopa County and all events giving rise to this Complaint occurred within Arizona.

5                                              *Venue*

6       7.      Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28

7   U.S.C. §1391.

8                                   *Nature of the Complaint*

9       8.      Incident to her employment, Plaintiff was a covered employee pursuant to

10  the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).

11  Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from

12  the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C.

13  §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Plan

14  and any other Company Plan, as a result of being found disabled in this action. Assuming

15  the issue is ripe before the Court (i.e. the "Own Occupation" timeframe in the Plan and

16  Policy has expired), Plaintiff also seeks a determination that she is disabled and meets the

17  "Any Occupation" definition of disability set forth in the Plan and the relevant Policy as all

18  the evidence she submitted to Liberty Mutual supports such a determination by the Court.

19      9.      After working for the Company as a loyal employee, Plaintiff became

20  disabled on or about June 3, 2014, due to serious medical conditions and was unable to

21  work in her designated occupation as a Business Development Manager. Plaintiff has

22  remained disabled as that term is defined in the relevant Policy continuously since that date

23  and has not been able to return to any occupation as a result of her serious medical

24  conditions.

25

26

1       10.    Following her disability, Plaintiff filed a claim for short term disability

2  benefits which was approved by Liberty Mutual, and those benefits have been paid and

3  exhausted.  Plaintiff alleges the fact that her short term disability claim was approved and

4  exhausted using a similar definition of disability as is contained in the long term disability

5  Policy, is relevant evidence for this Court to consider with regard to the reasonableness of

6  Liberty Mutual's denial of her long term disability claim and is also evidence that its denial

7  of her long term disability claim was influenced by its conflict of interest and its desire to

8  save money.

9       11.    Following the exhaustion of her short-term disability benefits, Plaintiff then

10  filed for long-term disability benefits under the relevant Policy which was administered by

11  Liberty Mutual.  Liberty Mutual made every decision in Plaintiff's long-term disability

12  claim, which was to deny it.

13       12.    Upon information and belief, the relevant Liberty Mutual Policy and

14  definition of disability governing Plaintiff's long term disability claim is as follows:

15

"Disability" or "Disabled" means:

16         1.  For persons other than pilots, co-pilots, and crewmembers of an aircraft;

17

18         1.  i. if the covered person is eligible for the 24 Month Own Occupation benefit, *"Disability"* or *"Disabled"* means that

19           during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or

20           Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

21       13.    In support of her claim for long-term disability benefits, Plaintiff submitted to

22  Liberty Mutual, medical evidence which supported her allegation that she met any

23  definition of disability as defined in the relevant Policy.

24

25

26

1    14.    As part of its review of Plaintiff's claim for long term disability benefits,

2  Liberty Mutual obtained medical records only "paper reviews" of Plaintiff's claim from a

3  "consulting physician" of its choosing; however, it never revealed the name of the physician

4  to Plaintiff.

5    15.    Upon information and belief, Plaintiff alleges the consulting physician may be

6  a long time medical consultant for the disability insurance industry and/or Liberty Mutual.

7  As a result, Plaintiff alleges the consulting physician may have an incentive to protect

8  his/her own consulting relationship with the disability insurance industry and/or Liberty

9  Mutual by providing medical records only paper reviews, which selectively review or

10 ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and

11 report(s) which are favorable to insurance companies and which supported the denial of

12 Plaintiff's claim.

13   16.    In a letter dated October 13, 2014, Liberty Mutual informed Plaintiff it was

14 denying her claim for long-term disability benefits.

15   17.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Liberty Mutual's

16 October 13, 2014 denial of her disability claim.

17   18.    In support of her appeal and claim for long term disability benefits, Plaintiff

18 submitted to Liberty Mutual additional medical and vocational evidence demonstrating that

19 she met any definition of disability set forth in the Policy.

20   19.    Plaintiff submitted to Liberty Mutual a May 28, 2015 narrative letter authored

21 by her treating physician who opined, "It is reasonable to assume that [Plaintiff] is unable to

22 work in any occupation and has been since June 3, 2014."

23   20.    Plaintiff also submitted to Liberty Mutual an April 3, 2015 narrative letter

24 authored by her treating physician who opined, "Given [Plaintiff's] history and nature of her

25

26

1   condition, it is reasonable to assume she has been unable to work in any occupation since

2   June 3, 2014 and will continue to be unable indefinitely."

3       21.     Plaintiff submitted to Liberty Mutual a November 11, 2014 narrative letter

4   authored by her treating physician who stated, "I specifically made the recommendation that

5   the [Plaintiff] strongly consider disability given the fact that she was having a difficult time

6   functioning due to ongoing flare-ups of her condition, generalized weakness and fatigue,

7   and diffuse myalgias..."

8       22.     Plaintiff also submitted to Liberty Mutual a Functional Capacity Evaluation

9   report dated February 11, 2015, wherein after an extensive several hour evaluation, a

10  qualified physical therapist determined, "[Plaintiff] could not fulfill the description of

11  ***sedentary work***." (original emphasis).

12      23.     Further supporting her claim, Plaintiff submitted a vocational report from a

13  certified vocational expert dated April 18, 2015, who after reviewing Plaintiff's medical

14  evidence and the definition of disability and interviewing Plaintiff concluded, "…it is

15  unmistakable, from a vocational perspective that [Plaintiff] is unable to return to her former

16  occupation or any occupation which may exist in the national economy…"

17      24.     Plaintiff also submitted updated medical records from each of her treating

18  providers and a list of her current medications, as well as the side effects they cause and the

19  impact they would have on her ability to work in any work environment.

20      25.     Despite the objective medical and vocational evidence supporting

21  Plaintiff's claim for long term disability benefits, as part of its review of Plaintiff's claim,

22  Liberty Mutual referred Plaintiff to a medical examination with a physician that it chose,

23  Paul F. Howard, M.D.  After a superficial examination with Dr. Howard, who upon

24  information and belief, Plaintiff believes may be regularly retained by the insurance

25

26

1  industry, he opined Plaintiff was able to engage in a gainful occupation and was not

2  disabled.  Plaintiff alleges that Dr. Howard's opinion that she can engage in a gainful

3  occupation is inaccurate, erroneous and against the clear weight of all the evidence.

4  Upon information and belief, Plaintiff alleges a motivating factor why Dr. Howard

5  opined she was able to return to a gainful occupation is in part due to his relationship

6  with the insurance industry and the regular medical examinations he may perform for the

7  industry.  As a result of his relationship with the insurance industry, Plaintiff alleges that

8  Dr. Howard may have an interest in protecting that relationship and may be biased and

9  lack objectivity.

10      26.    As an additional part of its review of Plaintiff's claim for long term disability

11  benefits, Liberty Mutual obtained a medical records only "paper review" of Plaintiff's claim

12  from a "consulting rheumatologist" of its choosing; however, it never revealed the name of

13  the rheumatologist to Plaintiff.

14      27.    Upon information and belief, Plaintiff alleges the consulting rheumatologist

15  may be a long time medical consultant for the disability insurance industry and/or Liberty

16  Mutual.  As a result, Plaintiff alleges the physician may have an incentive to protect his/her

17  own consulting relationship with the disability insurance industry and/or Liberty Mutual by

18  providing medical records only paper reviews, which selectively review or ignore evidence

19  such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are

20  favorable to insurance companies and which supported the denial of Plaintiff's claim.

21      28.    In a letter dated May 28, 2015, in order to engage Liberty Mutual in a

22  dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a

23  complete copy of any and all medical records only "paper reviews" from Liberty Mutual

24

25

26

1    and the opportunity to respond to these reviews as well as to provide them to her treating

2    physicians for their response prior to Liberty Mutual rendering a determination in her claim.

3         29.    In letters dated June 18, 2015 and June 29, 2015, in additional attempts to

4    perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of Dr.

5    Howard's report as well as any and all surveillance footage and surveillance summaries

6    associated with her file.  Plaintiff also requested the opportunity to respond to Dr. Howard's

7    report and any surveillance footage that may exist as well as provide them to her treating

8    physicians for their responses prior to Liberty Mutual rendering a determination in her

9    claim.

10        30.    Prior to rendering its final denial in Plaintiff's claim, Liberty Mutual never

11   shared with Plaintiff the medical records only "paper review" authored by the consulting

12   rheumatologist and never provided Plaintiff with a copy of Dr. Howard's report so she

13   could respond to the report and/or perfect her claim.  Liberty Mutual's failure to provide

14   Plaintiff with the opportunity to respond to its consulting rheumatologist's report as well as

15   Dr. Howard's report is an ERISA procedural violation and precluded a full and fair review.

16   Liberty Mutual's action in failing to disclose these reports is also a violation of Ninth

17   Circuit case law.

18        31.    In a letter dated July 15, 2015, Liberty Mutual notified Plaintiff it had denied

19   her claim for long-term disability benefits under the Policy.  In the letter, Liberty Mutual

20   also notified Plaintiff she had exhausted her administrative levels of review and could file a

21   civil action lawsuit in federal court pursuant to ERISA.

22        32.    Upon information and belief, Liberty Mutual's July 15, 2015 denial letter

23   confirms it failed to provide a full and fair review, and in the process committed several

24   procedural violations pursuant to ERISA due to among other reasons, completely failing to

25

26

1  credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all

2  of Plaintiff's reliable evidence.

3       33.    In evaluating Plaintiff's claim on appeal, Liberty Mutual had an obligation

4  pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other

5  participants" which it failed to do. [1]

6       34.    Liberty Mutual failed to adequately investigate and failed to engage Plaintiff

7  in a dialogue during the appeal of her claim with regard to what evidence was necessary so

8  Plaintiff could perfect her appeal and claim.  Liberty Mutual's failure to investigate the

9  claim and to engage in this dialogue or to obtain the evidence it believed was important to

10  perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she

11  did not receive a full and fair review.

12       35.    Plaintiff alleges Liberty Mutual provided an unlawful review which was

13  neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by

14  failing to adequately investigate her claim because its examining and reviewing medical

15  professionals were not truly independent; failing to credit Plaintiff's reliable evidence;

16  providing one sided reviews of Plaintiff's claim that failed to consider all the evidence

17  submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's

18  claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses

19

20

21  [1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

22

23

24

25

26

1    and/or limitations set forth in her medical evidence as well as the impact the combination of

2    those diagnoses and impairments would have on her ability to work; failing to engage

3    Plaintiff in a dialogue so she could respond to Liberty Mutual's doctors' reports by

4    submitting the necessary evidence to perfect her claim and failing to consider the impact the

5    side effects from Plaintiff's medications would have on her ability to engage in any

6    occupation.

7              36.    Plaintiff alleges the reason Liberty Mutual provided an unlawful review

8    which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. §

9    2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles

10   Liberty Mutual undertook as decision maker and payor of benefits.  Liberty Mutual's

11   conflict of interest provided it with a financial incentive to deny Plaintiff's claim, thereby

12   saving itself money.

13             37.    Plaintiff is entitled to discovery regarding Liberty Mutual's aforementioned

14   conflicts of interest and any individual who reviewed her claim and the Court may properly

15   weigh and consider extrinsic evidence regarding the nature, extent and effect of *any*

16   conflict of interest and/or ERISA procedural violation which may have impacted or

17   influenced Liberty Mutual's decision to deny her claim.

18             38.    With regard to whether Plaintiff meets the definition of disability set forth in

19   the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even

20   if the Court concludes the policy confers discretion, the unlawful violations of ERISA

21   committed by Liberty Mutual as referenced herein are so flagrant they justify *de novo*

22   review.

23             39.    As a direct result of Liberty Mutual's decision to deny Plaintiff's disability

24   claim, she has been injured and suffered damages in the form of lost long term disability

25

26

1   benefits, in addition to other potential employee benefits she may have been entitled to

2   receive through or from the Plan, from any other Company Plan and/or the Company as a

3   result of being found disabled.  Plaintiff believes other potential employee benefits may

4   include but not be limited to, health and other insurance related coverage or benefits,

5   retirement benefits or a pension, life insurance coverage and/or the waiver of the premium

6   on a life insurance policy providing coverage for her and her family/dependents.

7           40.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,

8   prejudgment interest, reasonable attorney's fees and costs from Defendants.

9           41.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.

10  §20-462, or at such other rate as is appropriate to compensate her for losses she incurred

11  as a result of Defendants' nonpayment of benefits.

12          WHEREFORE, Plaintiff prays for judgment as follows:

13          A.      For an Order requiring Defendants to pay Plaintiff her long term disability

14  benefits in the form of "Own Occupation" benefits as defined in the relevant Plan and

15  Policy as well as any other employee benefits she may be entitled to as a result of being

16  found disabled pursuant to the Policy, from the date she was first denied these benefits

17  through the date of judgment and prejudgment interest thereon;

18          B.      For an Order directing Defendants to continue paying Plaintiff the

19  aforementioned benefits until such time as she meets the conditions for termination of

20  benefits;

21          C.      Assuming the issue is ripe before the Court (i.e. the "Own Occupation"

22  timeframe in the Plan and Policy has expired), for an Order that Plaintiff also meets the

23  "Any Occupation" definition of disability set forth in the relevant Plan and Policy and she is

24  entitled to those benefits along with an Order directing Defendants to continue paying

25

26

-11-

1    Plaintiff these benefits and any other employee benefits she may be entitled to as a result of

2    being found disabled, until such time as she meets the conditions for the termination of

3    benefits;

4          D.      For attorney's fees and costs incurred as a result of prosecuting this suit

5    pursuant to 29 U.S.C. §1132(g); and

6          E.      For such other and further relief as the Court deems just and proper.

7                          DATED this 14th day of November, 2015.

8
                                   SCOTT E. DAVIS. P.C.
9
                                   By:    /s/ Scott E. Davis
10                                         Scott E. Davis
                                           Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26